**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | )        CR-10-0864-TUC-JMR-DTF |
|        Plaintiff, | ) |
| | ) |
| vs. | )    **REPORT AND RECOMMENDATION** |
| | ) |
| | ) |
| Fernando Abraham Figueroa, | ) |
| | ) |
|        Defendant. | ) |
| | ) |

Pending before the Court is Defendant's Motion to Suppress Statements. (Doc. 52.) The government responded in opposition. (Doc. 58.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. Defendant's motion was set for evidentiary hearing and evidence was heard on December 8, 2010. (Doc. 60.) Defendant was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Defendant's motion seeks to suppress statements he made in response to interrogation after his arrest on the ground that they were involuntary.[1] Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion to Suppress Statements.

---

[1]     At the motion hearing, Defendant withdrew his assertion that his statements were also made in violation of *Miranda*.

1

## I.

2

## FACTUAL FINDINGS

3        On April 28, 2010, a grand jury returned a four-count indictment charging Fernando

4   Abraham Figueroa and two others with drug trafficking. (Doc. 1.) Thereafter, a warrant was

5   issued for Figueroa's arrest. (Doc. 2.) The following day, April 29, 2010, at about 6:00 a.m.,

6   Figueroa was arrested in his home. According to the government, Figueroa was part of a

7   large Drug Enforcement Administration (DEA) investigation resulting in 3 indictments,

8   charging 23 individuals with drug trafficking. (RT 5.)[2]  Hence, the morning Figueroa was

9   arrested government agents were also attempting to arrest the other 23 charged defendants.

10  (RT 6-7.)

11       Figueroa was transported from his home to the DEA Tucson Resident Office and

12  placed in a holding cell with others who had been arrested in the sweep. (RT 7, 8.) At about

13  12:00 p.m., Figueroa was removed from the cell for processing. (RT 9.) Initially, routine

14  booking information was obtained from him but, at about 12:15 p.m., Figueroa was advised

15  of his *Miranda* rights. (RT 10-11.) He was presented a waiver form and Figueroa signed the

16  form at about 12:19 p.m., indicating that he was "willing to freely and voluntarily answer

17  questions." (RT 12-14; Ex. 1.) Thereafter, he made incriminating statements. (RT 17-18.)

18       There were 3 DEA agents present during the interrogation, including Special Agent

19  (SA) Chad Jenkins and SA Medina. (RT 11.) None of the agents were in uniform and

20  although the agents may have been armed, their weapons were either concealed or remained

21  in their holster. (RT 24-25, 29-30.) Figueroa was interrogated by the agents who were

22  sitting on the other side of a desk in a room that was about 10 feet by 8 feet. (RT 27.)

23  During the interrogation, Figueroa ate food and drank water provided to him by the agents.

24

25  _____

26       [2]       "RT" refers to the Reporter's Transcript of the December 8, 2010
    evidentiary hearing. (Doc. 64.) "Ex." refers to the government's exhibits admitted at that
27  hearing. (Doc. 62.)

28

1   (RT 10, 33.)  SA Jenkins testified that no promises or threats were made to Figueroa.  (RT
2   15-17, 19, 30-31.)

3       Figueroa testified that he agreed to make a statement because the agents told him they
4   were not interested in him, that they were looking for a bigger fish, and that if he cooperated
5   they would let him go.  (RT 34-35.)  According to Figueroa, he understood the agents'
6   promise to mean that if he made a statement he would be released and would not be charged.
7   (*Id.*)  Therefore, he cooperated and gave them a statement and didn't know what to think
8   when he wasn't released.  (RT 35.)  Figueroa testified that during prior arrests he had always
9   cooperated with law enforcement officers.  (*Id.*)  However, this was the first time he had been
10  offered release in exchange for cooperation.  (*Id.*)

11      Figueroa testified that SA Jenkins was not present when his interview began and did
12  not come into the room until later in the interview.  (RT 33, 36-37.)  He also said that the
13  agents did not remain in the room throughout the interview, that they came in and out.  (*Id.*)
14  SA Jenkins testified that he may have stepped out of the interview room briefly to answer his
15  telephone, for no more than a few minutes, but otherwise he was involved in the interview
16  from the time Figueroa was removed from his cell to the time when the interrogation ended.
17  (RT 21, 43-45.)  SA Jenkins verified that his handwriting is on the rights form indicating the
18  date and time the interview began.  (RT 44.)  SA Jenkins also stated that all three agents took
19  notes of Figueroa's interview and, when he examined SA Medina's report on the interview,
20  he had not missed anything significant.  (RT 45-46.)

21      On cross-examination, Figueroa testified that he was "foggy" that day.  (RT 38.)  He
22  did not recall whether the agents read to him the charges in the indictment, did not recall the
23  agents reading him his *Miranda* rights, and did not recall whether he advised Pretrial
24  Services that he had a drug problem.  (RT 37-38, 39, 41.)  On re-direct, Figueroa explained
25  that he was "foggy" because he had been doing drugs, he was "shaky," "stunned," and he did
26  not know what was going on.  (RT 41.)  When challenged by his counsel how he could
27  remember that the agents said certain things to him, Figueroa responded that he wasn't

28

1   incoherent and he knew what was going on but he was stunned and scared.  (RT 42.)

2   Figueroa then identified SA Medina as the person who had made the promises to him while

3   SA Jenkins was out of the room.  (*Id.*)

4                                              **II.**

5                                        **DISCUSSION**

6          Figueroa concedes that he voluntarily waived his *Miranda* rights.  Even when the

7   procedural safeguards of *Miranda* have been satisfied, a defendant is deprived of due process

8   if his conviction is founded upon an involuntary confession.  *See Dickerson v. United States*,

9   530 U.S. 428, 432 (2000).  To ensure due process, the test for determining the voluntariness

10  of a suspect's confession is whether, considering all the circumstances, the government

11  obtained the statement by physical or psychological coercion or by inducement so that the

12  suspect's will was overcome.  *See United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th

13  Cir. 2001) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)).  The circumstances

14  to be considered include: (1) whether there was police coercion; (2) the length of the

15  interrogation, its location and its continuity; (3) whether police advised the suspect of her

16  rights; and (4) whether there were any direct or implied promises of a benefit.  *Clark v.*

17  *Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003).  "A statement is involuntary if it is extracted

18  by any sort of threats or violence, [or] obtained by any direct or implied promises, however

19  slight, [or] by the exertion of any improper influence."  *Id.* (quoting *Hutto v. Ross*, 429 U.S.

20  28, 30 (1976)).  Courts also consider the defendant's age, education, the nature of any

21  questioning, and the use of any physical punishment such as the deprivation of food or sleep

22  to determine voluntariness.  *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir.

23  2003) (citing *Schenckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  "In short the true test

24  of admissibility is that the confession is made freely, voluntarily, and without compulsion or

25  inducement of any sort."  *Haynes*, 373 U.S. at 513-14.

26          In this case, Figueroa does not assert there was police coercion; nor complain about

27  the length of the interrogation, its location or its continuity; nor allege he was not advised of

28                                              - 4 -

1  his rights.  The record establishes that Figueroa was provided food and water, advised of his

2  rights and interrogated across a desk within the DEA offices.  The Court independently finds

3  there is no evidence of a police dominated or coercive environment.

4       Figueroa's single claim is that his confession resulted from the direct promise of a

5  benefit – he would be released if he cooperated.[3]  The Court finds Defendant's testimony

6  was not credible.  On direct examination, Figueroa described the alleged promises with some

7  precision.  On cross-examination, however, Figueroa was unable to recall most other aspects

8  of the interview and, on re-direct, Figueroa testified that his mind was "foggy" because he

9  had been doing drugs.  He also said that he was "shaky"and "stunned," and he did not know

10  what was going on.  Nevertheless, Figueroa maintained he still remembered the promises

11  made to him.  As he put it:

12      I mean, I wasn't incoherent.  I just said I was foggy on things, I wasn't
    incoherent.  I mean, I knew – I knew what was going on around me, I was just
13      stunned by it. . . . I knew what was going on.  I was just stunned.  I was in a
    daze, I – it was like a dream.  I didn't know what was – it was weird, it was
14      different.  I'd never been hit like that before and it was scary.

15  (RT 42.)  In addition, accepting Figueroa's scenario, the promise happened very quickly

16  while SA Jenkins was out of the room, and he remained unaware of it because nothing else

17  was spoken about the promise upon his return.  It was only on re-direct that Figueroa

18  identified the agent who made the promise as SA Medina, who was not present at the

19  evidentiary hearing.

20       In contrast, the Court finds SA Jenkins to be a credible witness.  SA Jenkins testified

21  that no promises were made to Figueroa, he voluntarily waived his *Miranda* rights, was

22  provided food and water and made a voluntary statement.

23

24      _____

25         [3]    In the motion to suppress, Figueroa alleged he had a history of not
cooperating with law enforcement and, absent substantial inducement, he would not have
26  voluntarily provided evidence against himself.  (Doc. 52 at 8.)  However, at the hearing,
he testified that he had always cooperated with law enforcement in the past without any
27  offer in exchange.  (RT 35.)

28

1    Discounting Defendant's testimony, there is no evidence of any promise or coercion.

2    Accordingly, the Court finds the government has demonstrated by a preponderance of the

3    evidence that Figueroa's statement was voluntary.

4    **III.**

5    **RECOMMENDATION**

6    In view of the foregoing, it is recommended that, after its independent review of the

7    record, the District Court DENY Defendant's Motion to Suppress Statements (Doc. 52).

8    Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file

9    written objections within 14 days of being served with a copy of this Report and

10   Recommendation.  If objections are not timely filed, they may be deemed waived.  The

11   parties are advised that any objections filed are to be identified with the following case

12   number:  **CR-10-0864-TUC-JMR**.

13   DATED this 15th day of December, 2010.

14

15

16

17

18   _____

19   D. Thomas Ferraro
     United States Magistrate Judge